IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 16, 2020

## TERRELL B. JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 105288   G. Scott Green, Judge**

_____

## No. E2020-00488-CCA-R3-PC

_____

The petitioner, Terrell B. Johnson, appeals the denial of his post-conviction petition arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Liddell Kirk, Knoxville, Tennessee, for the appellant, Terrell B. Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Mitch Eisenberg, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

I.    Trial Proceedings

The petitioner was convicted by a Knox County jury for possession with the intent to sell more than one-half gram of cocaine in a drug-free zone and possession with the intent to deliver more than one-half gram of cocaine in a drug-free zone. *State v. Terrell B. Johnson*, No. E2012-01946-CCA-R3-CD, 2013 WL 6237090, at *1 (Tenn. Crim. App. Dec. 3, 2013), *perm. app. denied* (Tenn. June 23, 2014). The convictions were merged, and the petitioner, a Range I offender, was sentenced to twelve years, with a minimum of

eight years to be served. *Id*. Additionally, the sentence was imposed consecutively to the petitioner's sentences in other cases. *Id*.

The evidence presented at trial showed that on July 19, 2006, three officers with the Knoxville Police Department were conducting surveillance of a gas station from the Auto Zone parking lot where the alleged drug transaction occurred. *Id*. The officers testified that the petitioner drove into the Auto Zone parking lot and parked his vehicle away from the officers. *Id*. A second car then pulled into the lot and parked beside the petitioner. *Id*. The petitioner got out of his vehicle, leaving two passengers in the car, and walked to the driver's side window of the second car. *Id*. It appeared to the officers that the petitioner had a cell phone in his right hand and a plastic bag in his left hand. *Id*. The officers witnessed the petitioner lean inside the driver's window and exchange an unidentified object with the driver. *Id*. The petitioner then turned and walked toward the driver's side door of his car. *Id*.

After the transaction occurred, the officers exited their vehicle and approached the petitioner. *Id*. When Officer Philip Jinks identified himself as a police officer, he noticed that the front seat passenger put his hand under the seat. *Id*. Officer Jinks believed the passenger was reaching for a weapon. *Id*. As a result, he drew his weapon and instructed the petitioner and his passengers to show their hands. *Id*.

The officers searched the petitioner and found 1.7 to 2.5 grams of cocaine on his person. *Id*. at *2. Officer Jinks testified that he confiscated "a $20 crack cocaine rock" from the unidentified driver of the second car. *Id*. The drugs confiscated from the second driver were packaged with the drugs found on the petitioner's person. *Id*. Officer Jinks admitted that he did not know the second driver's name or license plate number. *Id*. at *3. Officer Jinks explained that the amount of drugs confiscated from the petitioner was consistent with possession for resale, but noted multiple people could consume between 1.7 to 2.5 grams of cocaine in a single evening. *Id*. at *2-3.

Trevor McMurray, an analyst with Knoxville's Geographic Information System, testified that the Auto Zone was less than one thousand feet from Chilhowee Park. *Id*. at *7. One of the petitioner's passengers also testified, stating they stopped at Auto Zone due to mechanical problems with the petitioner's car. *Id*. The passenger explained the petitioner got out of the vehicle and then "a van arrived on the set . . . [police officers] pulled out their guns and told us to freeze." *Id*. The passenger did not see the petitioner sell drugs. *Id*.

The jury then found the petitioner guilty of possession with the intent to sell more than one-half gram of cocaine within 1000 feet of a public park and possession with intent to deliver more than one-half gram of cocaine within 1000 feet of a public park. *Id*. The

trial court merged the convictions and sentenced the petitioner to twelve years, with a minimum of eight years to be served. *Id.* On appeal, this Court affirmed the petitioner's conviction and sentence.

II.     Post-Conviction Proceedings

Following the denial of his direct appeal, the petitioner filed a timely pro se petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition, arguing trial counsel was ineffective for failing to: properly advise the petitioner of the risks associated with going to trial, properly advise the petitioner about testifying at trial, and for failing to appeal "the trial court's imposition of the maximum sentence and consecutive alignment of his prior convictions." Both trial counsel and the petitioner testified at the post-conviction hearing.

Trial counsel testified he represented the petitioner at trial and on appeal. On May 11, 2010, trial counsel received an email from the State offering the petitioner a plea deal disposing of the petitioner's three pending felony drug charges and three pending aggravated assault charges in exchange for a sentence of twenty-five years with a release eligibility of thirty percent. Trial counsel printed copies of the email, wrote "delivered a copy to [the petitioner]" on one of the copies, and delivered the offer to the petitioner. The email stated the petitioner had until May 14, 2010, to accept the offer. The email also threatened that if the petitioner did not accept the offer, the State would obtain a superseding indictment which would add the drug-free zone enhancement to the petitioner's charges. A copy of the email was entered into evidence.

While trial counsel did not have a specific memory of communicating the State's offer to the petitioner, his general practice is to discuss all offers with the client as well as the strengths and weaknesses of the client's case. Trial counsel stated he does not print out every email, and the fact that he printed this particular email and noted on the email that he delivered a copy to the petitioner, assured him that he discussed the offer with the petitioner. He further emphasized that it is always the client's decision whether to accept or reject a plea offer.

Trial counsel was unable to identify the other individual allegedly involved in the drug transaction. He attempted to determine the other driver's identity by speaking with Officer Jinks, but Officer Jinks claimed he did not remember the identity of the other driver. Trial counsel found this to be "suspicious" because Officer Jinks testified that he bought $20.00 worth of "crack rock" from the driver of the car to whom the petitioner allegedly sold drugs. Trial counsel explained, "it [was] rather suspicious to me that they didn't know the person's name, yet they were able to put forth facts that showed a [drug] transaction took place." In response to Officer Jinks's inability to produce the fact witness's identity,

trial counsel filed a *Ferguson*[1] motion arguing the State had the responsibility to preserve the identity of the other driver. The trial court denied the motion, and trial counsel raised this issue on appeal.

The petitioner and trial counsel discussed trial strategy prior to the trial. Trial counsel's strategy was to put on proof showing the drug transaction did not occur in the Auto Zone parking lot. Rather, it was the defense's position that the petitioner possessed cocaine for his personal use, not for sale, and intended to use the drugs later. Trial counsel explained this was the only strategy available because the petitioner was in possession of cocaine when he was arrested.

Trial counsel did not recall informing the petitioner of his right to testify at trial. However, trial counsel testified he discusses testifying with every client. Trial counsel's general practice is to analyze the composition of the jury and evaluate how the State presents its case before rendering an opinion about whether a client should testify. He also considers what the State will be able to prove based on the available evidence, his client's prior convictions, and other potential impeachment issues. Based on the petitioner's prior drug convictions, trial counsel did not believe it was in the petitioner's best interest to testify; however, he left the final decision up to the petitioner. Moreover, the trial court conducted a *Momon*[2] hearing prior to accepting the petitioner's decision not to testify.

Trial counsel admitted that one way to challenge the State's case was to allow the petitioner to testify that the drugs were for personal use or that they belonged to the other passengers in his vehicle. Trial counsel explained that the petitioner was convicted on drug charges in 2009, and he believed the petitioner's prior convictions would be prejudicial to the defense and negatively impact the petitioner's credibility. Trial counsel also decided not to challenge the State's imposition of the drug-free zone enhancement because the area in which the petitioner was arrested is considered a park and located in a school zone.

On cross-examination, trial counsel denied telling the petitioner, "hey, we got this. There's no way we could lose." Trial counsel testified, "I would be pretty dumb to [say that to a client]." He testified he explicitly tells clients that he does not make any guarantees about success at trial but ensures them he will do his best in working on the client's case.

The petitioner testified that he and trial counsel discussed what occurred in the Auto Zone parking lot on the day of his arrest. According to the petitioner, he went to Auto Zone because he was having car trouble. He parked his car in the Auto Zone parking lot,

---

[1] *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999).
[2] *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999).

got out of the car, then, as he was walking to the entrance of the store, officers approached and told him to "get on the ground." The officers then drew their weapons.

Two of the petitioner's cousins, an adult and a juvenile, were in the car at the time. There were other cars in the parking lot as well, but the petitioner did not know the occupants of the other vehicles. The petitioner and trial counsel discussed the other vehicles that were in the parking lot, but neither knew the identity of the driver allegedly involved in the transaction.

The petitioner claimed he purchased the cocaine earlier that day from a local dealer. The petitioner explained the cocaine was for personal use for him and his adult cousin. According to the petitioner, at the time of his arrest he was using 0.4 to 0.5 grams of cocaine in a single sitting. He was accustomed to consuming large amounts of the drug at one time, and he normally consumed 2.5 grams of cocaine in a night when he shared with others.

The petitioner admitted trial counsel delivered a copy of the State's plea offer to him, and they discussed the offer before deciding to go to trial. According to the petitioner, trial counsel did not explicitly explain to the petitioner that he would be charged under a drug-free zone statute if he refused to take the offer. However, trial counsel did tell the petitioner that he likely faced a higher sentence if he did not accept the plea.

The petitioner claimed trial counsel advised him that it was not in his best interest to accept the State's plea offer because the offer included the aggravated assault charges and additional drug charges. When trial counsel discussed the offer with the petitioner, the aggravated assault charges were still pending. Trial counsel believed the petitioner would serve an extensive sentence because the assault victims were police officers, and it was unlikely the petitioner would receive parole. The petitioner testified that trial counsel was able to get the aggravated assault charges and a drug charge from 2007 dismissed. The petitioner also claimed trial counsel assured him that his case was an "open and shut case" because the State could not produce the driver of the other car or another witness to show that a drug transaction occurred.

According to the petitioner, their trial strategy was to have the petitioner testify that the cocaine was for personal use. However, after the trial court ruled that the State could use the petitioner's two prior drug convictions for impeachment purposes, trial counsel was concerned that if the petitioner testified the cocaine was for personal use, the testimony would open the door to the petitioner's two prior convictions for possession of drugs with intent to sell. The petitioner explained that people who sell cocaine usually have larger amounts than 1.7 to 2.5 grams in their possession at a given time, and he would have explained that to the jury had he testified at trial. However, trial counsel's advice regarding his prior convictions kept him from testifying.

The petitioner testified that the original plea offer was for twenty-five years at thirty percent in exchange for pleading guilty to three drug charges and three aggravated assault charges. Ultimately, the aggravated assault charges were dismissed, and the petitioner pled guilty to one of the drug charges and received a twelve-year sentence at thirty percent. He was found guilty at trial on the other pending drug charge and received an eight-year sentence at thirty percent. Those sentences ran concurrently. Then, the petitioner's sentence from the current case ran consecutively to the earlier disposed of drug charges. Thus, the petitioner was serving an aggregate sentence of twenty-four years with a mandatory minimum sentence of eight years.

On cross-examination, the petitioner testified that his cousin was called as a witness at trial. His cousin testified that the petitioner went to Auto Zone because the petitioner's car engine was smoking. The petitioner admitted that Officer Jinks agreed that a person could use between 1.7 and 2.5 grams of cocaine in an evening during cross-examination by trial counsel. He also agreed that trial counsel's line of questioning furthered the trial strategy that the petitioner possessed the cocaine for personal use.

After reviewing the proof, the post-conviction court denied relief. This timely appeal followed.

*Analysis*

On appeal, the petitioner argues trial counsel was ineffective for advising the petitioner to reject the State's plea offer and for advising the petitioner not to testify at trial. The State contends the post-conviction court properly denied the petitioner's claim that he received ineffective assistance of counsel at trial. Following our review of the record and submissions of the parties, we affirm the judgment of the post-conviction court.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A. Trial Counsel's Advice During Plea Negotiations

The petitioner argues trial counsel was ineffective for advising the petitioner to reject the State's plea offer. He contends trial counsel misrepresented the strength of the State's case and incorrectly assured the petitioner of success at trial. The State argues the

petitioner conceded trial counsel was not ineffective regarding the plea offer. We agree with the State.

The State's offer required the petitioner to plead guilty to three felony drug offenses and three aggregated assault offenses for which the petitioner would receive an aggregate sentence of twenty-five years with a thirty percent release eligibility. The petitioner rejected this offer and proceeded to trial where a jury convicted him of his third felony drug offenses for which the trial court imposed a sentence of twelve years with a mandatory minimum sentence of eight years. The trial court also ordered the petitioner's sentence to be served consecutively to his prior convictions for an effective sentence of twenty-four years. In effect, the petitioner's release eligibility was greater for the sentences he received, but he received a lighter sentence by one year and three less felony convictions by deciding to go to trial.

Trial counsel testified he delivered the State's offer to the petitioner, discussed the offer and the strengths and weaknesses of the case with the petitioner, and the petitioner rejected the offer. During the post-conviction hearing, the petitioner testified to the same. The petitioner also admitted that some of the charges included in the State's plea offer were later dismissed. Further, the petitioner admitted trial counsel informed him that he risked serving a higher sentence if he rejected the offer and proceeded to trial.

The post-conviction court found there was no evidence to show that if trial counsel's advice regarding the State's offer had changed the petitioner would have accepted the offer. In fact, the post-conviction court noted that the petitioner admitted to possessing cocaine. As a result, the post-conviction court found the only prejudice the petitioner could assert was that his release eligibility was greater after going to trial than if had he accepted the State's offer. The post-conviction court found this argument purely speculative. We agree.

To establish prejudice, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Had the petitioner accepted the State's offer, he may have become eligible for release after serving thirty percent or 7.5 years of the proffered twenty-five-year sentence, but there is no clear way of knowing when the petitioner would have been released. While the petitioner's eligibility of release was greater after going to trial, it is still impossible to know when the petitioner would have been released regardless of whether he had accepted the State's offer. As a result, the petitioner is unable to show prejudice and is not entitled to relief on this issue.

B. Testifying at Trial

The petitioner argues trial counsel was ineffective because he advised the petitioner not to testify at trial. The petitioner claims his testimony was necessary to rebut the State's evidence that the petitioner possessed the drugs with the intent to sell them, as well as to explain the facts and context of his actions prior to his arrest. The State contends the post-conviction court properly found that trial counsel's advice and trial strategy was sound. We agree with the State.

At the post-conviction hearing, trial counsel testified that he informs all of his clients of their right to testify. He informs his clients that, if they choose to testify, they will be cross-examined by the State and their prior convictions might be used as impeachment evidence. Trial counsel also discusses the strengths and weaknesses of the case, and whether testimony from the client would be helpful. He provides his clients with his personal opinion but does not pressure them to testify. While the initial trial strategy was to have the petitioner testify that the drugs were for personal use, the strategy changed after the trial court ruled the petitioner's prior convictions could be introduced for impeachment purposes. The petitioner's testimony mirrored that of trial counsel. He further testified that trial counsel believed his testimony would be detrimental to the defense because of his prior drug convictions. The petitioner relied on this advice when deciding not to testify. Additionally, the petitioner admitted that trial counsel's cross-examination of Officer Jinks furthered their trial strategy that the cocaine was for the petitioner's personal use.

Initially, the post-conviction court noted that the trial court conducted a proper *Momon* hearing during which the petitioner testified it was his decision not to testify. The post-conviction court also found that because the petitioner had prior drug convictions, which the trial court ruled were admissible for impeachment purposes, advising the petitioner not to testify was sound advice by trial counsel. The petitioner's prior convictions put the petitioner's credibility in jeopardy, and had the petitioner testified, the results at trial would not have been different.

Based on our review of the record, we agree with the post-conviction court. Trial counsel discussed testifying with the petitioner and provided the petitioner with reasonable advice regarding his prior convictions. The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against the findings of the post-conviction court. *See Tidwell*, 922 S.W.2d at 500. Thus, the petitioner has not shown deficient performance on the part of trial counsel. The petitioner also did not present any proof to show that there was a reasonable probability that, but for trial counsel's advice, the result at trial would have been different. As a result, the petitioner cannot establish prejudice and is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE